440 F.Supp. 1022 (1977)
In re WHEAT FARMERS ANTITRUST CLASS ACTION.
Joe ZINSER et al., Plaintiffs,
v.
Clarence PALMBY and Continental Grain Company, Defendants.
John SPEARMAN et al., Plaintiffs,
v.
Clarence PAMLBY and Continental Grain Company, Defendants.
Edgar W. CLEVELAND et al., Plaintiffs,
v.
Clarence PALMBY et al., Defendants.
Misc. No. 77-0060. MDL No. 129.
United States District Court, District of Columbia.
October 21, 1977.
*1023 *1024 Alan S. Mark and Jonathan R. Mook, Lobel, Novins & Lamont, Washington, D. C., for plaintiffs-movants.
David J. Anderson and Lewis K. Wise, Dept. of Justice, Washington, D. C., for deponents-respondents.

MEMORANDUM OPINION
SIRICA, District Judge.
The three cases which comprise this antitrust class action have been consolidated for purposes of pretrial proceedings and are currently pending in the United States District Court for the Western District of Oklahoma (Multidistrict Litigation Docket Number 129). The consolidated action is presently before this Court for the limited purpose of resolving plaintiffs' motion for production of documents pursuant to Rules 37(a) and 45(d) of the Federal Rules of Civil Procedure. This Court is the appropriate forum for plaintiffs' motion because the motion is directed at two non-party deponents and because the non-party depositions were taken and subpoenas duces tecum issued in this judicial district. See Fed.R. Civ.P. 37(a)(1).
The lawsuits which underlie the consolidated class action were filed in October and November of 1976. Plaintiffs  Texas and Oklahoma wheat farmers  alleged that several large grain exporting companies and one former Department of Agriculture official conspired to withhold information regarding the 1972 U.S.-Soviet grain sale from the public. As a result, according to plaintiffs, grain prices were kept at a lower level than would have obtained had the fact or the magnitude of the planned grain sale been generally known. Defendants' actions are claimed to have violated the antitrust laws, primarily section 1 of the Sherman Act, 15 U.S.C. § 1 (1970).
The cases were consolidated in the Western District of Oklahoma on April 23, 1975, after which the parties apparently engaged in extensive discovery. In May 1976, the Oklahoma court issued a pretrial order in which it limited the "second wave of discovery" to two issues relating to the question of liability: "(1) whether defendants conspired to fix the price of wheat sold on the open market in the relevant geographical areas between May 1, 1972 and September 1, 1972, by collusively suppressing information concerning the 1972 Russian wheat agreements; and (2) whether the alleged conspiracy had an actual injurious effect upon the plaintiffs with respect to the price of wheat sold by them on the open market in the relevant geographical areas between May 1, 1972 and September 1, 1972."
In November 1976, plaintiffs caused to be issued by the clerk of this Court, pursuant to Rule 45 of the Federal Rules of Civil Procedure, subpoenas for the attendance of witnesses and the production of documents at several depositions to be held in the District of Columbia. The subpoenas were directed at the Departments of State and Agriculture (hereinafter "the government") and instructed each department to designate an appropriate official to be deposed concerning the sale of agricultural commodities to the Soviet Union in 1971 and 1972. The witnesses were also commanded to bring with them a wide variety of documents relating to the same subject.
*1025 The government filed objections to production of some of the documents, asserting that most were classified and therefore subject to a claim of executive privilege. The objections were renewed at the taking of the deposition of each department. Through a process of declassification and negotiation with plaintiffs, however, much of the requested material was eventually turned over. This process continued even after plaintiffs filed the instant motion for production of documents on March 22, 1977. Following a hearing on plaintiffs' motion in May 1977, this Court ordered the government deponents to furnish plaintiffs with a detailed statement listing every document not produced in its entirety, together with a description of each document, a summary of its contents and a statement of the grounds on which the government relies for withholding the document or any portion thereof. Such a statement was submitted by the government, and a second hearing conducted in September 1977.
In its present posture, the dispute revolves around only eleven documents. Although some of these documents are still classified, the government has never formally asserted a claim of privilege. At the September hearing, the Court was informed by counsel that the government now declines to assert privilege because it believes such claims should be reserved for the most critical situations. The government now argues, however, that the disputed documents are wholly irrelevant to plaintiffs' underlying antitrust action.[1]
No claim of privilege having been asserted, the Court is therefore left to consider plaintiffs' motion in light of the broad standard of relevance set forth in Rule 26 of the Federal Rules of Civil Procedure: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .." This standard is specifically incorporated into the rule providing for the taking of depositions of non-parties and the production of documents by non-parties. See Fed.R.Civ.P. 45(d)(1).
In addition, in the peculiar circumstances of this action, there is the additional limitation that the request be encompassed within the scope of "the second wave of discovery" as defined by the Oklahoma court and as set out above. In effect this means that the "subject matter involved in the pending action" under Rule 26 has been defined in terms of two issues: whether the defendants engaged in the alleged conspiracy, the object of which was to fix prices on the market between May 1 and September 1, 1972; and whether the alleged conspiracy resulted in an adverse effect on wheat prices during the same period.
The Court has carefully examined the eleven disputed documents in camera. Seven of the eleven have been withheld in their entirety from plaintiffs; four have been furnished to plaintiffs with deletions. Plaintiffs have already been provided with extensive summaries of each document pursuant to this Court's order of May 19, 1977.
In examining the documents, the Court has been mindful of the extremely broad standard of relevance contained in Rule 26 and the similarly broad information-gathering purposes of the discovery rules generally. See, e. g., Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S.Ct. 385, 91 L.Ed. 451 *1026 (1947). As one leading commentator has noted: "No one would suggest that discovery should be allowed of information that has no conceivable bearing on the case. But it is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." 8 Wright & Miller, Federal Practice and Procedure § 2008, at 46-47 (1970).
The Court has also considered that these documents are being sought as part of the culmination of discovery efforts that have lasted several years, and that the subject matter of discovery has been narrowed by the Oklahoma court in which these actions are consolidated. Although no claim of privilege has been asserted, the Court is also aware that these documents are nonetheless sensitive, in that they represent confidential communications between top government officials.
The Court has concluded that all eleven documents, in general, are "relevant" to the conspiracy issue as defined by the Oklahoma court. As to the seven documents which have been withheld in their entirety, however, the government's summaries are so complete that little purpose would be served by ordering production of the actual documents. In fact, the seven summaries now in plaintiffs' possession might better be termed "paraphrases" than summaries. They often verge on verbatim rendition of the underlying documents. Those few substantive omissions which have been made in these seven documents relate for the most part to U.S. negotiating tactics and strategies which have no conceivable bearing on plaintiffs' case. Although it is possible that the plaintiffs may encounter some evidentiary problems should an attempt be made to introduce these summaries into evidence, the Court is confident that the court or courts which eventually hear these actions can work out such difficulties through mutual agreement of the parties. Having closely examined the documents in question and compared them to the government summaries, this Court is convinced that the summaries are accurate and, with regard to potentially relevant material, complete.
The situation with regard to the four documents which have been produced with deletions is somewhat more complex. Document I, identified in the record as Moscow telegram 8434 of November 12, 1971, contains only one deletion  the name of the source of information set out in the document. Should the source in some way be identified with any of the defendants, the name may well be quite relevant to the conspiracy issue. The fact that the document here may relate to a period of time preceding the U.S.-Soviet agreement, as well as the period of actual conspiracy defined in the Oklahoma court's order, is not important. The telegram clearly relates to the grain requirements of the Soviet Union and may therefore shed light on knowledge which one of the defendants could later have used in furtherance of the alleged conspiracy. Therefore, the name of the source is relevant to the subject matter of the conspiracy issue and the government will be directed to divulge the deleted portion of the document. For identical reasons, the deleted portion of Document II, identified in the record as Moscow telegram 1574 of February 23, 1972, will also be ordered disclosed. This deletion, like that in Moscow telegram 8434, relates to the identity of the source of information contained in the telegram.
With regard to Document VI, identified in the record as Moscow telegram 2691 of March 27, 1972, one full paragraph has been deleted. This paragraph has been summarized for plaintiffs, and the Court has determined that the actual substantive omission relates to only two sentences. This material has no conceivable relevance to the subject matter of the defined conspiracy. It deals only with an inquiry made by U.S. officials and a brief response by Soviet officials. The government's objection to further disclosure of this telegram will therefore be sustained.
Finally, document number XI, identified in the record as Moscow telegram 8894 of September 5, 1972, is the fourth *1027 document produced for plaintiffs in original form with deletions. One of the deletions is the entire second paragraph. This paragraph, however, only serves to identify various Soviet officials and is therefore not in dispute.[2] Paragraph nine has likewise been deleted in its entirety. The first thirteen words of this paragraph may have some bearing on the conspiracy issue and the Court will order that portion of the paragraph disclosed. The remaining twenty-six words deal with what may be a sensitive matter which has no conceivable bearing on plaintiffs' case.
The other deletions in telegram 8894 all relate to the identity of the representative of American business who conveyed the information in the telegram to the American embassy. Even though this representative visited Moscow on September 2, 1972  one day after the conclusion of the relevant period of conspiracy defined by the Oklahoma court  whatever the telegram may reveal about his knowledge on that date regarding the Soviet grain situation or the grain sales generally is certainly relevant to what he knew at an earlier time. The Court will accordingly order the government to divulge the identity of the representative, as well as the name of the business which he represented.
Nothing herein should be taken to indicate what action the Court may have taken had the government asserted a formal claim of privilege regarding any of the deletions in the four documents. Absent such a claim, the Federal Rules dictate that "relevant" materials are, as a general matter, discoverable. The Court will therefore order that the above-described portions of the disputed documents be produced.
NOTES
[1] The government deponents originally asserted an additional objection to plaintiffs' motion  that it was not timely, under Rule 45(d)(1), because it was not made before or during the taking of the depositions involved. The government did not press this contention at oral hearing. In any case, the Court finds that it is without merit. The record shows that plaintiffs' "delay" in filing the instant motion until sometime after the depositions of the government deponents was a result of continuing negotiations regarding the documents between plaintiffs and the government. Since there is nothing to prevent a party answering an objection that a motion to produce is untimely under Rule 45(d)(1) by renoticing a deposition or by simply issuing a new subpoena for documents under Rule 45(b), it is evident that the rule was not intended as a firm time limitation. Rather, it is simply an indication that if a party wishes to examine documents before or in conjunction with a noticed deposition, and if the non-party deponent objects, the party must move for an order "before or during the taking of the deposition."
[2] At oral hearing, counsel for plaintiffs informed the Court that plaintiffs had no interest in learning the names of any Soviet officials in the disputed documents and that insofar as the motion for production relates to the names of such officials, the motion was withdrawn.